UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORRAINE FEMINO | : | |
| | : | |
| v. | : | C.A. No. 06-143ML |
| | : | |
| NFA CORPORATION d/b/a | : | |
| HOPE GLOBAL, et al. | : | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant NFA Corporation hereby moves for summary judgment on all claims contained in Plaintiff's Complaint. In support of this motion, defendant relies upon its Local Rule Cv 56 Statement of Undisputed Material Facts, the evidentiary material attached thereto, and the Memorandum of Law In Support Defendant's Motion For Summary Judgment.

NFA Corporation,

By their Attorneys,
PANNONE LOPES & DEVEREAUX LLC

/s/ William E. O'Gara
William E. O'Gara, Esq. (#4257)
1800 Financial Plaza
Providence, RI 02903
(401) 824-5100
(401) 824-5123 (facsimile)

## CERTIFICATION

The undersigned hereby certifies that a true copy of the foregoing document was filed via ECF and mailed via first class mail, postage prepaid on this 8th day of February, 2007 to:

Lorraine Femino
4 Bayou Drive
Greenville, RI 02828

/s/ William E. O'Gara

UNITED STATES DISTICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORRAINE FEMINO | : | |
| | : | |
| v. | : | C.A. No. 06-143ML |
| | : | |
| NFA CORPORATION d/b/a | : | |
| HOPE GLOBAL, et al. | : | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

In her Complaint the plaintiff seems to advance five claims under the Americans with Disabilities Act ("ADA") and the Employee Retirement Income Security Act ("ERISA"). First, the plaintiff alleges that NFA Corporation ("NFA") violated the ADA by having a pre-qualification test used to disqualify certain medical evidence. Second, the plaintiff claims that a 24 month benefit limitation for disabilities based on self reported systems also violates the ADA. The plaintiff claims that these limitations have a disparate effect resulting in discrimination based on an individual's disability. Third, the plaintiff alleges that NFA operated the plan without a named plan fiduciary as required by ERISA. Fourth, the plaintiff alleges that the plan fiduciaries have not discharged their duties in accordance with ERISA. Finally, the plaintiff alleges that she has not received certain plan documents as required by ERISA. All of the plaintiff's ERISA claims arise from the alleged failure of NFA to provide the plaintiff with certain documents and information.

NFA is entitled to a judgment as a matter of law on all of the plaintiff's claims. The pre-qualification test used to disqualify certain medical evidence is permitted under

the ADA and does not constitute discrimination based on disability. In addition, the 24 month limitation on benefits for disabilities based on self reported symptoms is also permitted under the ADA. The plaintiff's remaining claims under ERISA are barred by the doctrine of res judicata as a result of the decision in Femino I. Femino v. NFA Corp., 2006 WL 1997626 (D.R.I.).

PERTINENT FACTS

NFA Corporation ("NFA") is the Plan Sponsor and Plan Administrator of the "NFA Corporation Employee Long Term Disability Coverage for all Employees" plan ("Plan"). (Defendant's Local Rule Cv 56 Statement of Undisputed Material Facts (hereinafter "Facts") ¶ 1.) The plaintiff enrolled in NFA's long-term disability plan ("the Plan") when she began her employment with NFA in 1995. (Facts ¶ 2.) In 1999 the Plan was amended and the Prudential Insurance Company of America ("Prudential") became the insurer. (Id. ¶ 3.) A number of changes were made to the Plan, including the imposition of a 24 month benefit period for disabilities primarily based on self-reported symptoms. (Id. ¶ 4.)

In May of 2001, plaintiff stopped working due to fibromyalgia, an alleged disabling condition. (Id. ¶ 5.) Benefits were approved following plaintiff's administrative appeal, and plaintiff received payments under the Plan. (Id. ¶ 6.) Benefits were subsequently terminated in 2003 based on the self-reported symptoms provision of the Plan limiting recovery for disabilities based on self reported symptoms to 24 months. (Id. ¶ 7.) Plaintiff commenced an action on January 20, 2005 claiming various violations under ERISA. (Id. ¶ 8.) The plaintiff filed a second amended complaint on February 1, 2006 asserting the following claims: (1) Failure to disclose material modifications to the

Plan in connection with the 1999 amendments, in violation of 29 U.S.C. § 1022 and 29 CFR 2520.104a-7. (2) Breach of fiduciary duty by implementing the amended plan "without a written Plan Document" in violation of 29 U.S.C. §§ 1102 and 1104. (3) Breach of disclosure obligation by failing to timely provide plaintiff a copy of the 1995 SPD upon her written request in November of 2004, for which plaintiff sought civil penalties under 29 U.S.C. § 1132(c)(1)(B). (Id. ¶ 9.) The defendant's motion for summary judgment in Femino I was granted on July 17, 2006. (Id. ¶ 10.)

On March 28, 2006 the plaintiff filed the instant complaint alleging violations under the Americans with Disabilities Act and ERISA. Femino v. NFA Corp., CA 06-143ML ("Femino II").

LEGAL STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving party has made its preliminary showing that no genuine issue of material facts exists, the non-movant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trial-worthy issue. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). To satisfy the criterion of trial-worthiness, the non-movant must establish the existence of an issue that is both genuine and material to his claim. *See* Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993). A "genuine issue" is one "supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999). "Material" means that a fact has the potential of affecting

the outcome of the case. *See* Kearney v. Town of Wareham, 316 F.3d 18, 22 (1st Cir. 2002).

As to issues on which the nonmoving party bears the burden of proof, "he must present definite, competent evidence to rebut the motion." Id. (quotation and citation omitted). The non-movant may not defeat a motion for summary judgment by relying upon evidence that is "merely colorable" or "not significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Thus, summary judgment will be appropriate where the non-moving party rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## ARGUMENT

### I. PRE-QUALIFICATION DISQUALIFICATION OF CERTAIN MEDICAL EVIDENCE AND SYMPTOM BASED BENEFIT LIMITATIONS DO NOT VIOLATE THE ADA.

The gravamen of the plaintiff's first claim under the ADA is that NFA violated the ADA by disqualifying certain medical evidence based on self reported symptoms and by limiting the time of recovery to 24 months for disabilities based on self reported symptoms. Plaintiff's claim appears to proceed as follows: (1) Requiring medical evidence submitted by plan participant doctors to pass a pre-qualification test violates the 42 U.S.C. § 12112(a) prohibition of discrimination based on disability; (2) Limiting disability benefits to 24 months for disabilities based on self reported symptoms also violates 42 U.S.C. § 12112(a).

#### A. Pre-Qualification of Medical Evidence

The plaintiff errantly relies on the Supreme Court decision in Griggs. v. Duke Power Co., 401 U.S. 424, 432-3 (1971) in an attempt to claim that the pre-qualification of medical evidence is a violation of the ADA. Griggs was a suit under the Civil Rights Act that invalidated intelligence tests used to disqualify African American job applicants from attaining certain jobs. Id. The court held that even though the tests were applied equally to all applicants regardless of color, the disparate effect against African Americans was enough to violate the Civil Rights Act. Id. The plaintiff seems to argue that because the ADA ensures for disabled individuals the same protections afforded minorities under the Civil Rights Act, the same standard established in Griggs should apply to tests applied to disabled individuals. Thus the plaintiff claims that even though the evidence tests used by the insurance company in assessing risk are applied equally to disabled and non-disabled individuals, it has a disparate effect on disabled individuals.

The plaintiff's argument completely misses the mark because it fails to address express provisions within the ADA, specifically the insurance safe harbor provision found in 42 U.S.C. § 12201(c). The plaintiff's claims are completely without merit as both the ADA and the case law interpreting it have held that insurance companies or providers in the process of underwriting, classifying, or administering risks are free to treat disabilities and the evidence supporting them differently. 42 U.S.C. § 12201(c) specifically states that the ADA shall not be construed to prohibit or restrict:

> "(1) an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or
>
> (2) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit

> plan that are based on under writing risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or
>
> (3) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance."

This provision allows insurance companies to treat different illnesses and the evidence proving such illnesses differently. 42 U.S.C. § 12201 clearly stands for the proposition that the ADA was not intended to affect the way the insurance industry classifies and assesses risk. The ADA protects disabled individuals from discrimination in access to goods or services, but not in an insurance company's administration of risk. For example, an insurance office must be physically accessible to disabled individuals and an employer must not place obstacles in front of disabled individuals that would discourage or prevent them from obtaining benefits offered to all employees, "but need not provide insurance that treats the disabled equally with the non-disabled." Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1115 (9th Cir. 2000); Ford v. Schering-Plough Corp., 145 F.3d 601 (3rd Cir. 1998).

Seven circuits have clearly stated that insurance providers are permitted to provide divergent levels of benefits to individuals with different types of disabilities. *See* Kimber v. Thiokol Corp., 196 F.3d 1092 (10th Cir. 1999); Rogers v. Dept. of Health, Environ. Control, 174 F.3d 431 (4th Cir. 1999); Ford, 145 F.3d at 608; Parker v. Metropolitan Life Insurance Company, 121 F.3d 1006 (6th Cir. 1997); EEOC v. CAN Ins. Cos., 96 F.3d 1039 (7th Cir. 1996); Krauel v. Iowa Methodist Medical Center, 95 F.3d 674 (8th Cir. 1996); Modderno v. King, 82 F.3d 1059 (D.C. Cir. 1996). These cases

establish that insurance companies are free to disqualify medical evidence and limit benefits in the administration of benefit plans.

When applying these principles to pre-qualification medical evidence disqualification, it is clear that such practices are permitted. If an insurance company establishes that disabilities based on self reported symptoms should be treated differently than disabilities based on clinical or medical evidence, both the safe harbor provisions of the ADA and the interpreting case law establish that such behavior is permitted. It follows that the pre-qualification of certain medical evidence, mainly medical evidence that is based purely on self reported symptoms, is permitted in determining benefit payouts. As a result, the disqualification of medical evidence based purely on self reported unsubstantiated symptoms is clearly within the purview of insurance providers.

B. Twenty Four Month Limitation on Disabilities Based on Self Reported Symptoms.

Implementing a 24 month limitation for disability benefits based on self reported symptoms is a practice that is clearly within the safe harbor provisions of the ADA and in fact has been expressly permitted by multiple courts. A variety of reasons have been expressed for such an allowance, the most prevalent being that the ADA allows insurance companies to determine and assess risk and to administer insurance plans based on such determinations. Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104 (9th Cir. 2000). Parker v .Metropolitan Life Insurance Company, 121 F.3d 1006 (1st Cir. 1997); Ford, 145 F.3d at 608. The result is that the safe harbor provisions of the ADA allow insurance companies to treat disabilities and the evidence proving such disabilities differently.

In Weyer, 198 F.3d at 1107, an employer provided long term disability policy had a 24 month limit for individuals who were disabled because of mental illness, alcoholism, or drug abuse. The court first held an insurance company or an employer administering an employer-provided disability policy is not a place of public accommodation as is required by Title III. Id. at 1115. In addition, the court held that even if a disability policy was a good sold at a place of public accommodation, the safe harbor provision under § 12201 allows insurance providers to make such distinctions and limitations. Id. at 1116. The court went on to state that there is no discrimination when such distinctions apply equally to all employees. Id. Thus in order to violate the ADA, the employer would have to place some obstacle or bar that would prevent disabled individuals from signing up for the plan, for example charging higher prices for disabled individuals. Id.

In Whaley v. U.S., 82 F.Supp.2d 1060 (D.Neb.2000), an employee disability insurance plan contained a 24 month limitation on benefits resulting from a nervous or mental disorder. The court stated that such a classification did not violate the ADA and was protected by the safe harbor provisions. Id. *See Also* Leonard v. Israel Discount Bank of New York, 199 F.3d 99 (2nd Cir. 1999) (Holding that insurance company did not violate ADA by limiting coverage for mental disabilities to 2 years without similarly limiting coverage for physical disabilities).

In addition, seven federal circuit courts have held that insurance companies are free to establish different standards for the review of medical evidence and for the assessment of risks and payouts based on different disabilities. Every one of these cases permits limiting benefits based upon the type of disability. *See* Kimber v. Thiokol Corp., 196 F.3d 1092 (10th Cir. 1999); Rogers v. Dept. of Health, Environ. Control, 174 F.3d

431 (4th Cir. 1999); Ford, 145 F.3d at 608; Parker v. Metropolitan Life Insurance Company, 121 F.3d 1006 (6th Cir. 1997); EEOC v. CAN Ins. Cos., 96 F.3d 1039 (7th Cir. 1996); Krauel v. Iowa Methodist Medical Center, 95 F.3d 674 (8th Cir. 1996); Modderno v. King, 82 F.3d 1059 (D.C. Cir. 1996).

For the above mentioned reasons the plaintiff's claims under the ADA are without merit.

II. PLAINTIFF'S CLAIMS BROUGHT UNDER ERISA ARE BARRED BY THE DOCTRINE OF RES JUDICATA.

The gravamen of the plaintiff's ERISA complaint is that NFA has failed to provide her with certain plan documents and other information thus violating certain provisions of ERISA. The plaintiff seems to argue that because information she has requested cannot be found in the documents she has been provided, the information must not exist. The plaintiff prays that the court compel NFA to provide her with the requested information. Plaintiff's claim appears to proceed as follows: (1) NFA failed to have a plan fiduciary as required by 29 U.S.C. §§ 1104(a)(1) and 1102; (2) By providing a benefit plan without a named fiduciary the plaintiff was denied access to such fiduciary for appeals in violation of 29 C.F.R 2560.503-1(h)(1); (3) NFA Corporation denied plaintiff access to certain plan documents as required under 29 U.S.C. §§§ 1024(b)(2), 1024(b)(4), and 1104. Some of the issues raised in this claim are identical or similar to the ERISA claims raised in Femino I. In any event, it is abundantly clear that the issues raised by the plaintiff could have been raised in Femino I. In addition, the plaintiff relies on many of the same ERISA provisions relied upon in Femino I.

In addition, the plaintiff clearly admitted that her claims were or could have been raised in Femino I, stating that "I could have brought them against the first, but I chose to

bring them up in the second one." (Transcript of Deposition of Plaintiff Lorraine Femino (hereinafter "Pl. Dep.") at 12, pertinent provisions attached hereto.) The plaintiff also stated that the remedy she sought in Femino I is identical to the remedy she is seeking in this case, reinstatement of benefits under her disability policy based on ERISA violations for failure to provide requested documentation. (Pl. Dep. at 5). The plaintiff expressly admitted that she brought the ERISA claims in this case, because they failed in Femino I. (Pl. Dep. at 6). As a result, it is clear that the plaintiff did or could have brought the present ERISA claims in Femino I.

"Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from re-litigating claims that were raised or *could have been raised* in that action." In re El San Juan Hotel Corp., 841 F.2d 6, 9 (1st Cir.1988); American Bridge Company v. Providence Place Group Limited Partnership, 263 F.Supp.2d 330, 333 (D.R.I. 2003); Miles Un-Ltd., Inc. v. Town of New Shoreham, 602 F.Supp. 238 (D.R.I. 1985). Res judicata prevents plaintiffs from splitting their claims by requiring them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit. Apparel Art Int'l, Inc. v. Amertex Enters., Ltd., 48 F.3d 576, 583 (1st Cir.1995); Miles Un-Ltd., Inc. v. Town of New Shoreham, 602 F.Supp. 238 (DRI 1985). In determining whether res judicata precludes litigation of a party's claims, the court first considers three factors: (1) whether a final judgment was entered on the merits in an earlier suit; (2) whether there is sufficient identity between the causes of action asserted in the earlier and later suits; and (3) whether there is sufficient identity between the parties in the two suits. Id.

The doctrine of res judicata bars claims that *were or could* have been raised in a prior action, but one must first meet the initial elements. In the case of Femino, element (1) is clearly satisfied because a final judgment was entered in Femino I by the Federal District Court of Rhode island on July 17, 2006. Femino, 2006 WL 1997626 at 8. Element (3) is also easily satisfied because the parties in the present suit are identical to the parties in the first. Id. at 1. As shown in the following paragraphs, element (2) is satisfied because there is sufficient identity between the plaintiff's prior and current causes of action.

1. Sufficient Identity between Causes of Action

Sufficient identity between causes of action has been found where a cause of action embraces the various possible claims derivable from "a set of facts which can be characterized as a single transaction or series of related transactions." Cooper v. Principi, 71 Fed.Appx. 73, 75 (1st Cir. 2003). The test to determine the identity of two causes of action for purposes of res judicata is whether the essential or operative facts are the same in both cases. Id. In making this determination, courts consider various factors, such as (1) whether the facts are related in time, space, origin or motivation, (2) whether they form a convenient trial unit, and (3) whether their treatment as a unit conforms to the parties' expectations. Id. This test does not require identity of legal theory. Porn v. National Grange Mut. Ins. Co., 93 F.3d 31, 34 (1st Cir.1996) (noting that "[t]he mere fact that different legal theories are presented in each case does not mean that the same transaction is not behind each.")

In Cooper, 71 Fed.Appx. at 76, an employee of the Department of Veterans Affairs brought an action challenging his removal from a job. The first suit included

claims of unjust denial of severance, damage to credit and other similar claims. Id. at 75. The first suit was dismissed because the issues raised were not within the statute of limitations. Id. The plaintiff then filed a second suit raising separate claims including the denial of vocational training, file tampering, and denial of certain benefits. Id. at 76. In applying the doctrine of res judicata, the court held that all of the claims in the second suit were related to the plaintiff's job removal and were factually similar in time, origin and motivation. Id. The court stated that the plaintiff's "claims in both suits seek to redress for the same wrong: his removal from his job." Id. In sum, although the claims were slightly different, the plaintiff could have and thus should have raised them during the first suit.

In Miles Un-Ltd., Inc., 602 F.Supp. at 239 the court stated that "entry of a final judgment following an adjudication on the merits extinguishes … all rights of a plaintiff to remedies against the defendant with respect to *all or any part of the transaction, or series of connected transactions, out of which the complaint arose.*" The court went on to state that res judicata applies not only to those issues that were actually litigated, but also to those which might have been. Id. at 240.

The Plaintiff's claims in both suits seek redress for the same wrong, the defendant's alleged failure to comply with ERISA in terminating her long term disability benefits. Both claims address ERISA violations relating to the administration of an employer-sponsored long-term disability plan and the content and availability of certain documents. The claims raised by the plaintiff are very similar to the ERISA claims raised in Femino I, and where they differ, could have been raised in that first suit. The plaintiff raises ERISA claims that were or could have been raised in her earlier suit. The final

judgment entered in Femino I extinguished all rights of the plaintiff to ERISA remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions.

Furthermore, the plaintiff relies on many of the same statutory provisions in each claim. In Femino I, the plaintiff claimed that NFA breached their fiduciary duty under 29 U.S.C. §§ 1102 and 1104 by failing to provide the plaintiff with a written plan document, and by failing to provide the plaintiff with a copy of the 1995 plan upon her request. Femino, 2006 WL 1997626 at 4. The plaintiff also claimed disclosure and administration violations under 29 U.S.C. § 1022 and brought suit under 29 U.S.C. § 1132(c)(1)(B). Id. In her present suit, the plaintiff once again relies upon 29 U.S.C. §§§ 1022, 1102 and 1104 and again claims NFA has violated their fiduciary duty by failing to provide her with alleged additional plan documents and more generally by failing to properly administer the plan. Femino, CA 06-143ML (Complaint at 14 ¶ 1-3). The present issues are nearly identical to those raised in Femino I and thus should have been raised at that time.

Both actions arose from a set of facts which can be characterized as a single transaction or series of related transactions; ERISA violations arising from the termination of long term disability benefits and the administration of an ERISA benefit plan. The combined actions clearly make a convenient trial unit, and in fact, the causes of action are themselves almost identical, both based on the alleged failure of the defendants to properly administer and document the plan as required by ERISA. As a result, the plaintiff's complaint should be dismissed pursuant to the doctrine of res judicata.

2. All facts relevant to the plaintiff's claim were available to the plaintiff at the time of Femino I

The doctrine of res judicata may be subverted only in the event that the subsequent cause of action is based on facts that were unavailable to the plaintiff at the time of the first cause of action. Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998). Where the plaintiff knew or *should have known* of the claim or facts when the first action was filed, res judicata should bar a second action. *Amjur Judgments §510, New Conditions, Facts, or Evidence.* (2006). If the facts relied upon by the plaintiff were in existence at the time of the first suit, and the plaintiff had a full and fair opportunity to litigate all claims at that point, res judicata will apply. Massachusetts School of Law at Andover, Inc., 142 F.3d at 39.

The facts relating to the alleged missing documentation and fiduciary clearly existed at the time of Femino I, and the plaintiff had a fair opportunity to raise and litigate such claims. Had the plaintiff exercised due diligence leading up to her first cause of action, it is likely she could have discovered the facts upon which she bases this cause of action. It is the duty of the plaintiff to plead all relevant facts and claims in once convenient trial unit. Cooper, 71 Fed.Appx. at 75. Plaintiffs are not permitted to plead only certain facts and claims, saving others for subsequent attacks. Id. By her own admission the factual basis for the plaintiff's claim was in existence and within her grasp when she filed Femino I, and should have been filed at that time.

CONCLUSION

In sum, the safe harbor provisions of the ADA and the weight of authority establish that both pre-qualification disqualification of certain medical evidence, and 24 month limitations on benefits for certain disabilities are both permitted and generally

accepted practices within the insurance industry. In addition, the plaintiff's claims under ERISA were or could have been raised in Femino I and are thus barred by the doctrine of res judicata. As a result, the defendant's motion for summary judgment should be granted.

NFA Corporation,

By their Attorneys,
PANNONE LOPES & DEVEREAUX LLC

/s/ William E. O'Gara
William E. O'Gara, Esq. (#4257)
1800 Financial Plaza
Providence, RI 02903
(401) 824-5100
(401) 824-5123 (facsimile)

CERTIFICATION

The undersigned hereby certifies that a true copy of the foregoing document was filed ECF and mailed by first class mail, postage prepaid on this 8th day of February, 2007 to:

Lorraine Femino
4 Bayou Drive
Greenville, RI 02828

/s/ William E. O'Gara