**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LORRAINE FEMINO** | : | |
| | : | |
| | : | |
| | : | |
| **VS.** | : | |
| | : | **C.A. 06-143ML** |
| | : | |
| | : | |
| **NFA CORPORATION d/b/a HOPE GLOBAL, et al.** | : | |
| | : | |

**<u>PLAINTIFFS MOTION IN OPPOSITION TO DEFENDANTS MOTION FOR ATTORNEY FEES</u>**

Plaintiff Lorraine Femino hereby files motion in opposition to defendants motion for attorneys fees, Document 24. In support of this motion, plaintiff relies on its Local Rule Cv 56 Statement of Undisputed Material Facts and Plaintiffs Memorandum of Law in Opposition to Defendants Motion for Attorneys Fees.

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401)-949-4933

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served by United States Postal Mail, postage prepaid on this 26th day of March, 2007 to:

William E. O'Gara, Counsel for Defendants
One Financial Plaza, Suite 1800
Providence, RI 02903

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401) 949-4933

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LORRAINE FEMINO** | : | |
| | : | |
| **VS.** | : | |
| | : | **C.A. 06-143ML** |
| | : | |
| **NFA CORPORATION d/b/a HOPE GLOBAL, et al.** | : | |

**PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION FOR ATTORNEY FEES**

## I. INTRODUCTION

Plaintiff files objections to NFA's demand for attorneys fees on a basis that plaintiffs claims do have merit and that defendant NFA Corp. (hereafter "NFA") in their capacity as the Plan Administrator of the "NFA Corporation Employee Long Term Disability Coverage for all Employees" plan (hereafter "Plan") created the conditions which resulted in the multiple civil actions brought by plaintiff. NFA provides no evidence demonstrating how NFA honored fiduciary responsibilities as the Plan Administrator that might have limited litigation. Instead of showing evidence of positive actions by NFA as the Plan fiduciary in matters between Femino and NFA, NFA has sought cover under the doctrine of res judicata claiming rights to not be required to make any further statements on unresolved material matters. The litigation NFA claims is vexatious in matters between Femino and NFA is the end result of NFA's willful strategy since 2004 to replace candor with silence and misrepresentation.

In NFA's motion, NFA references all prior litigation and thus plaintiff addresses all litigation in the objection. The objections cited herein are the same as objections in CA 06-513.

## II. PERTINENT FACTS

Plaintiff remains a Plan participant in the Plan. (Plaintiff Lorraine Femino's Local Rule Cv 56 Statement of Undisputed Material Facts in Opposition to Defendants Motion for Attorney Fees (hereafter "Facts") ¶ 1) Prudential Insurance Company of America, the Plan Provider (hereafter "Prudential") did send a Notice to plaintiff stating that plaintiffs claim must meet all "contractual requirements". (Facts ¶ 19)

The Plan is based on a written instrument identified as the "Group Contract" (Facts ¶ 22). Pages 1-30 of Exhibit H [1] being the "Group Insurance certificate" are only part of the Group Contract (Facts ¶ 24). Exhibit H contains pages 1-35 where there exists no place on pages 1-35 an identification that Exhibit H is either the "Group Contract" or the "Plan document" (Facts, ¶¶ 26, 27). Exhibit H states that "insurance contracts" can be examined at the "plan administrators office". (Facts ¶ 25) The Plan operates with a 3 year statute of limitations for filing claims against the Plan (Facts ¶ 28)

Prior to March 28, 2006, NFA did call Exhibit H the Summary Plan Description, (Facts, ¶¶ 7, 8) After March 28, 2006, NFA invented a new name for Exhibit H being the "true and correct copy of the Plan Document, as amended in 1999, which includes the updated Summary Plan Description" where the document Exhibit H was entered as "Exhibit H" in prior litigation (Facts ¶ 13). Plaintiff did submit to NFA a Request for Admission to "admit that there are any other written instruments in the Plan apart from the document Exhibit H containing any terms defining a payable claim" where plaintiff received from NFA a written response neither

[1] Exhibit H is from Document 88, Femino v. NFA Corp., CA 05-019 ML, Statement of Undisputed Facts by NFA Corporation, re 87 Motion for Summary Judgment. Attachment # 2 Benefit Highlights - Long Term Disability exhibit 2 entered as "Exhibit H" and stated by NFA as being the true and correct summary plan description and plan document.

admitting or denying plaintiffs Request for Admission (Facts, ¶ 16). NFA is the named Plan Administrator for the Plan (Fact ¶ 2). Prudential Insurance Company of America, the Plan provider (hereafter "Prudential") is not a Named Plan fiduciary (Facts ¶ 4)

Plaintiff did send a Request for Production of Documents ("Request") to NFA Corporation via NFA's Counsel ("Counsel") on or about October 23, 2005. (Facts ¶ 9) In response to plaintiffs Request to NFA for "All documents pertaining to the current NFA Corp. disability welfare benefit DG-67020-RI", plaintiff did receive NFA's specific written response to the aforementioned request being stated as "Objection, the request is overbroad and unduly burdensome. Further documents related to the disability plan and other human resources documents were destroyed in a recent flood at the Hope Global facility." (Facts ¶ 10)

Plaintiff filed a Motion to Compel Discovery of Documents based on NFA's failure to provide all requested documents in the Request, but the Motion to Compel Discovery of Documents was denied in Court Order signed by Magistrate Judge Lincoln D. Almond on January 25, 2006 due to NFA's reasons of an undue burden. (Facts ¶ 11) On June 8, 2006, Plaintiff did again file a Motion to Compel Discovery to obtain a document identified as being a contract but was denied in Order Signed by Magistrate Judge Lincoln D. Almond on September 11, 2006. (Facts ¶ 14) Plaintiff did file motion for reconsideration but was denied in Order, by Judge Mary M Lisi dated October 25, 2006. (Facts ¶ 15) On September 23, 2006 Plaintiff did submit to NFA a Request for Admission to admit if any other documents existed in the Plan apart from Exhibit H where plaintiff received from NFA a written response neither admitting or denying plaintiffs Request for Admission. (Facts ¶ 16) On December 9, 2006, Plaintiff sent a written request to Prudential asking for assistance in identifying documents in the Plan, but in a

written response received from Prudential, was denied any assistance where Prudential did state plaintiff had to obtain Plan information from the Plan Administrator. (Facts ¶ 18)

## III. LEGAL STANDARD

The Civil Rules authorize federal courts to grant summary judgment only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

When the summary judgment record is compiled the trial court must scrutinize it "in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is only appropriate if "the record discloses no trial worthy issue of material fact and the moving party is entitled to judgment as a matter of law." *Alexis v. McDonald's Rests. Inc.*, 67 F.3d 341, 346 (1st Cir. 1995). The Court must disregard "conclusory allegations, improbable inferences, and unsupported speculation," *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990); *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir. 1996).

## IV. ARGUMENT

In an action by a plan beneficiary to enforce a right under ERISA, the district court "may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1); see *Miller v. United Welfare Fund*, 72 F.3d 1066, 1074 (2d Cir. 1995). In determining whether to make such an award, the court is ordinarily to consider "five factors: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly

under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987), cert. denied, 496 U.S. 905 (1990).

**1. NFA in their capacity as the Plan Administrator knew of plaintiffs need for information on the specific policies used to terminate plaintiffs benefits but selected a strategy of silence over disclosure thus causing claims to be multiplied.**

The plain language of the Plan shows material inconsistencies to NFA's position that Exhibit H is the exclusive written instrument containing provisions for the Plan. Contained within Exhibit H are clear indications of material inconsistencies in NFA's position that Exhibit H is the "true and correct Plan document and Summary Plan description;

1. "Plan" ("…a line of coverage under the Group Contract.") (Facts ¶ 22)
2. "Payable Claim" ("…a claim for which Prudential is liable under the terms of the Group Contract"). (Facts ¶ 23)
3. "The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance certificate" (Facts ¶ 24)
4. "Rights and Protections" include a participants right to "Examine without charge, at the plan administrators office all plan documents including insurance contracts…". (Facts ¶ 25)
5. Exhibit H is not in any place identified as being the Group Contract (Facts ¶ 26)
6. Exhibit H is not in any place identified as being the Plan document (Facts ¶ 27)

In interpreting contracts, the Court is guided by "common-sense canons of contract interpretation," including the canon that unambiguous terms are given their plain and natural meaning. *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995). Plaintiff filed multiple motions to compel discovery of documents based on NFA's failure to provide a document identified as being a Plan "contract". (Facts ¶¶ 9, 10, 11, 14, 15) Since the time NFA first claimed an undue burden in December 2005 to provide Plan documents, NFA has not established any evidence showing diligence to obtain a document identified as being the Group Contract for the purpose of "inspection" at the administrators "principal office" See *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 84 (1995) (quoting ERISA § 1024(b)(2) which requires "[t]he administrator shall make copies of the latest… contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator").

Courts have widely adopted a position that fiduciary duties require disclosure of material information when it is shown that a fiduciary knew about or should have foreseen the employees' need for material information, but failed to disclose it. See *Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 12 (1st Cir. 1994) ("fiduciary must disclose material facts of which plan participants are unaware but need to know in order to protect their interests in dealing with third parties"); *Bixler v. Central Pa. Teamsters Health & Wel. Fund*, 12 F.3d 1292 at 1300 (3d Cir.1993) (failure to disclose facts which the fiduciary could see the beneficiary did not know but needed to know); *Jordan v. Federal Express*, 116F.3d 1005,1015-17 (3dCir. 1997) (fiduciary's failure to inform "constitute[s]a material omission" if "there is a substantial likelihood that it will mislead a reasonable employee"); *Glaziers & Glassworkers Local 252 Annuity Fund v.*

*Newbridge Sec.*, 93 F.3d 1171 at 1181-2 (3d Cir. 1996) (fiduciary must communicate information "visible to its practiced eye" that is in the "best interest" of beneficiaries to disclose);

NFA fails to show any evidence that plaintiff has received a document clearly identified as being the "Group Contract". NFA fails to establish evidence of attempts to obtain for inspection document(s) under the Plans "insurance contract". NFA's failure to obtain for inspection all Plan documents at the office of the Plan Administrator pertaining to "insurance contracts" did violate ERISA Section 404, 29 U.S.C. § 1104 ("Fiduciary duties"), which requires, in pertinent part, that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (D) in accordance with the documents and instruments governing the plan.

NFA's failure to keep all "insurance contracts" at the principal office of the Plan administrator did materially expand all litigation between Femino and NFA Corp..

**2. NFA chose at their own risk to ignore ERISA fiduciary duties to plaintiff based on reliance of a faulty premise that the doctrine of res judicata would protect NFA from having to ultimately resolve inconsistencies in Plan documents thus expanding all litigation between Femino and NFA Corp..**

NFA did raise an argument that at the close of Femino v. NFA Corp., CA 05-019, (hereafter "Femino I"), under the doctrine of res judicata, NFA's fiduciary duties to plaintiff ended. See NFA motion for summary judgment, Femino v NFA, CA 06-513ML, Document 7, pages 3 – 9; and also NFA motion for summary judgment, Femino v. NFA, CA 06-143, Document 23, pages 9 - 14. NFA provides no evidence that during the course of Femino I, NFA did provide accurate disclosure of the identity of Plan documents as the Plan itself defines such

documents. NFA shows no evidence of having taken reasonable action since 2004 to obtain Plan information pertaining to the "Group Contract" and "insurance contracts" where such information would have allowed NFA to make proven statements on the proper identity of the entire Group Contract.

NFA in their capacity as the Plan Administrator has fiduciary duties of accurate disclosure. See *Pegram v. Herdrich*, U.S., 120 S. Ct. 2143, 2151 (2000) (Holding a fiduciary is "someone acting in the capacity of a manager, administrator, or financial advisor to a plan"). See also ERISA Sec. 3(21); 29 U.S.C. 1003(21). A "fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information" *Farr v. U.S. West*, 151 F.3d 908, 913 (9th Cir. 1998), cert. denied U.S., 120 S. Ct. 935 (2000)).

Plaintiff did file requests for information on all Plan documents including the "contract" (Facts ¶¶ 9, 14) The repeated requests by plaintiff for accurate information on the Plan contract put NFA on notice that plaintiff did not have all the information needed to make an informed decision on possible claims to Plan benefits. NFA has made no claim that plaintiff is not a Plan participant as defined under ERISA 3 (7) in this matter. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989) (A plan participant is defined as those who "may become eligible" to receive benefits who "have a colorable claim that . . . he or she will prevail in a suit for benefits.") .

Plan information found to be inaccurate cannot be the fault of actions by the participant. See *EEOC v. Whitin Machine Workers, Inc.*, 635 F.2d 1095, 1097 (4th Cir. 1980) (when facts are "within [the] unique knowledge" of defendant, it bears burden of proof concerning these facts). See also *Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) ("We regard Title VII, ADEA,

ERISA, and FLSA as standing in pari passu and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another."). If NFA has not provided accurate Plan information to plaintiff, at best, the error must be judged a mistake by NFA or worse, a material misrepresentation.

The Court should examine the applicability of the doctrine of res judicata in this matter in the light of Federal Rules of Civil Procedure, Rule 60(b) which provides for new trials under Rule 59(b) due to "1) mistake, inadvertence, surprise, or excusable neglect; ...(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party".

Res judicata should not be applied as a basis that plaintiff should have worked more diligently, or obtained accurate Plan information from third parties, or that NFA should be relieved of fiduciary obligations to plaintiff following Femino I. Such a position would be inconsistent with decades of case law and the intent of Congress in enacting ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983), and "to protect contractually defined benefits," *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). See generally 29 U.S.C. 1001 (setting forth congressional findings and declarations of policy regarding ERISA). See also *Curtiss Wright v. Schoonejongen*, supra, 514 U.S. at 79. (in matters pertaining to Plan Administration, participants must look only to NFA "and not to any other person.").

NFA created additional litigation by relying on a faulty premise that fiduciary duties to plaintiff did not apply after Femino I, thus expanding all litigation between Femino and NFA by their own actions.

**3. At the time plaintiff filed the action in Femino II under the Americans with Disabilities Act, the claim did have merit due in large part to NFA's silence on providing to plaintiff specific Plan contractual provisions allowing the exclusion of all of plaintiffs medical evidence pertaining to fibromyalgia from all disability reviews.**

Plaintiff filed an initial complaint EEOC #16JA400282A with the Rhode Island Commission for Human Rights on September 8, 2004 under the Americans with Disabilities Act of 1990, 42 U. S. C. § 12101, et. seq., (hereafter " ADA"). See Femino v. NFA Corp., CA 06-143 (hereafter "Femino II"), p 9, at 22). Plaintiff did receive a notice of right to sue from the EEOC under EEOC #16JA400282A dated December 30, 2005 (Femino II, p 6, at 23). Plaintiff filed Femino II on March 28, 2006. The basis for Femino II was plaintiffs claim that Plan provisions arbitrarily blocked plaintiffs doctors medical evidence pertaining to fibromyalgia from being credited into plaintiffs disability reviews. (Femino II page 4, at 14) See also *Black & Decker Disability Plan v. Nord,* 538, U.S., 822, (2003), ("Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence").

NFA had time between September 2004 and March 2006 to provide to plaintiff the specific Plan contractual policies which allowed the blocking of all of plaintiffs medical evidence into disability reviews where such policies were not "arbitrary" Plan policies. NFA fails to show that NFA did provide to plaintiff reasonable proof of the "contractual" provisions in the Plan which allowed the Plan to disqualify all of plaintiffs medical evidence pertaining to fibromyalgia without using "standards accepted in the practice of medicine". See Femino II, p 4, at 8 and p 10 at 28; see also *Morgado v. Birmingham-Jefferson County Civil Defense Corps.*, 706 F.2d 1184, 1189 (11th Cir. 1983, cert.denied , 464 U.S. 1045 (1984) (employer must prove

entitlement to provision's protection because such facts "are peculiarly within the knowledge of the employer").

NFA was well aware of plaintiffs need for the specific Plan policies used to exclude all of plaintiffs medical evidence pertaining to fibromyalgia. See Femino I, Document 1, Complaint, page 10 at 34 ("At the time of this filing, Prudential has not provided the requested written policies of exclusion of medical evidence in continuing reviews as requested in (33) above but Prudential has confirmed verbally such written policies do exist in DG-67020-RI.") From the time Femino I was filed on January 20, 2005, until the March 28, 2006 when Femino II was filed, NFA shows no evidence of providing to plaintiff any specific Plan policies that address the issue of arbitrary exclusion of all of plaintiffs medical evidence specifically pertaining to a diagnosis of fibromyalgia. The document Exhibit H by itself contains no specific Plan provision that would allow all medical evidence obtained by plaintiffs doctors pertaining to fibromyalgia to be deemed as unreliable since the Plan did pay benefits specifically for a diagnosis for fibromyalgia for the first 24 months of plaintiffs disability. (See Femino II, Document 23, # 2 Exhibit B (NFA Statement of Undisputed Facts), page 1, at 5, and page 2, at 6)

NFA's own inaction to sufficiently prove how the Self Reported symptoms provision could disqualify all of plaintiffs medical evidence pertaining to fibromyalgia from all disability reviews made the claims in Femino II credible and thus expanded litigation.

**a. NFA as the Plan Administrator withheld information from plaintiff in violation of plaintiffs protections under Title VII of the Civil Rights Act of 1964 thus expanding litigation.**

NFA successfully argued that NFA Corporation maintains a Human Resources Department staffed with "Specialists". See Femino I, Document 89, Affidavit of Linda

Haddock, re: 88 Statement of Undisputed Facts by NFA, ("responsible to coordinate the various benefits offered to employees with duties to provide employees with information regarding the various benefit plans."); see also Femino I, Document 90, ¶ 5, Affidavit of Dorothy Mattiello, re: 88 Statement of Undisputed Facts by NFA, ("During my career with NFA, I have maintained an "open-door" so that employees seeking information regarding benefits have always been able to obtain the information from the Human Resources Department".)

Plaintiff filed multiple motions to compel discovery of documents based on NFA's failure to provide a document identified as being a Plan "contract". (Facts, ¶¶ 9, 10, 11, 14, 15) On September 23, 2007, plaintiff did submit to NFA a Request for Admission to admit if any other documents existed in the Plan apart from Exhibit H where plaintiff received from NFA a written response neither admitting or denying plaintiffs request for Admission. (Facts ¶ 16)

Providing "information regarding the various benefit plans" to current employees, but not to plaintiff, a prior employee, is in violation of plaintiffs rights to equal treatment under Title VII of the Civil Rights Act of 1964 (hereafter "Title VII"), § 2000e-3(a), § 704(a) which states;

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

The Supreme Court made clear that the term "employees," as used in the anti-retaliation provision of Title VII, includes former employees. See *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ("Because the term "employees," as used in § 704(a) of Title VII, includes former

employees, petitioner may sue respondent for its allegedly retaliatory postemployment actions"). See also *Passer v. American Chem. Soc'y*, 935 F.2d 322, 330-31 (D.C. Cir. 1991) (term "employees" in Age Discrimination in Employment Act (ADEA) includes former employees).

"The ADA directs…the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when enforcing the ADA's prohibitions against employment discrimination on the basis of disability". *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002). See also *Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) ("We regard Title VII, ADEA, ERISA, and FLSA as standing in pari passu and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another.").

ERISA requires that disclosures must be "transparent, accurate, and comprehensive." *Burstein v. Retirement Acct. Plan for Allegheny Health Ed. Resources Fdn.*, 334 F.3d 365 at 378 (3d Cir. 2003). The ADA, Section 501, 42 U.S.C. 12201 states in (b) Relationship to Other Laws-"Nothing in this Act shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law". NFA must use "care, skill, prudence, and diligence" in the duties of Plan administration for current employees. See Beddal verses State Street Bank and Trust Company, 137 F. 3d 12, 18 (First Circuit 1998) (quoting 29 U.S.C. § 1104(a)(1)(B)). Plaintiff alleges that where NFA continues to deny plaintiff "care, skill, prudence, and diligence" in providing an answer to a single question, such action by NFA be considered as a violation of Title VII, § 2000e-3(a), § 704(a) being retaliation by NFA against plaintiff for filing the instant case being based on violations of the ADA.

NFA's actions to deny plaintiff the "open door" services of the NFA Corporation Human Resources Department between September 8, 2004 to the present was a violation of plaintiffs

protections under Title VII, § 2000e-3(a), § 704(a) and did materially contribute to the expansion of litigation in all matters between Femino and NFA Corp..

**4. At the time plaintiff filed the ERISA action in Femino III, the claim did have merit due to NFA's silence on providing to plaintiff specific resolution to the identity of Plan documents allowing plaintiff to protect against forfeiture of possible Plan benefits due to an approaching statute of limitations.**

Plaintiff filed Femino v. NFA Corp., CA 06-513, (hereafter "Femino III") due to NFA's actions of making one claim that Exhibit H was the Summary Plan Description (Facts ¶ 7, 8) and then changing the identity of Exhibit H to also be the Plan Document (Facts ¶ 13). These changing statements by NFA were made in spite of the fact that Exhibit H is not in any place identified as being the Plan Document or Group Contract. (Facts ¶ 26, 27) On September 23, 2006, plaintiff did submit to NFA a Request for Admission to admit if any other documents existed in the Plan apart from Exhibit H where plaintiff received from NFA a written response neither admitting or denying plaintiffs Request for Admission. (Facts ¶ 16) The Plan operates with a 3 year statute of limitations for filing claims against the Plan. (Facts ¶ 28) Facing the possibility of forfeiture of possible benefits from the Plan due to expiration of the statute of limitations, plaintiffs filing of a lawsuit was reasonable, prudent, and does have merit given all of the circumstances of a Plan fiduciary refusing to provide material Plan information. See *Cooper v. IBM Personal Pension Plan*, 274 F.Supp.2d 1010 (S.D. Ill. 2003). ("The plain language of [ERISA § 502(a)] confers statutory standing to plan participants,...who seek to protect their employee benefit rights").

A Plan administrator has a special duty to offer "complete and accurate" disclosures about provisions that are "confusing" or "likely to be misunderstood." *Harte v. Bethlehem Steel*, 214 F.3d 446, at 448 and 452-3 (3d Cir. 2000). ERISA requires that the Plan not be "not administered in a way, that unduly inhibits or hampers the initiation …of claims for benefits" See 29 CFR 2560.503-1(b)(3). See also *Glaziers & Glassworkers Local 252 Annuity Fund v.Newbridge Sec.*, 93 F.3d 1171, 1181 (3d Cir. 1996) ("duty to disclose material information is the core of a fiduciary's responsibilities"). By NFA misrepresenting the identity of Plan documents, and subsequent failure to provide accurate disclosure if any other documents existed in the Plan, NFA expanded litigation by their own actions.

**5. Plaintiff has no ability to pay NFA's legal fees.**

The Court has recognized and granted to plaintiff Leave to Proceed in forma pauperis throughout all litigation between Femino and NFA Corp.. See e.g. Femino III, Document 2 (granting in forma pauperis). NFA is aware of plaintiffs poverty and inability to pay legal fees and thus the motion should be seen as futile and frivolous.

## Conclusion

For the reasons stated herein, Plaintiff Lorraine Femino requests that the Court grant its Motion in Opposition to Defendants Motion for Attorneys Fees.

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401)-949-4933

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served by United States Postal Mail, postage prepaid on this 26th day of March, 2007 to:

William E. O'Gara, Counsel for Defendants
One Financial Plaza, Suite 1800
Providence, RI 02903

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401) 949-4933