Prudential Financial

**Denise Moppert**
Disability Consultant

The Prudential Insurance Company Of America
PO Box 13480
Philadelphia, PA 19101

Phone: (800) 842-1718 Ext: 5789
Fax: (877) 889-4885
Hours: 07:30 AM 03:30 PM

November 24, 2003

Lorraine A Femino
4 Bayou Drive
Greenville, RI 02828

Claimant: Lorraine A Femino
Control #/Br: 67020 / 00002
Claim #: 10434340
Date of Birth: 01/10/1950

Dear Ms. Femino:

We have completed our review of your claim for Long Term Disability (LTD) benefits under the Group Policy #67020 issued to NFA Corporation.

In order to receive benefits under Group Policy #67020, covered employees must meet all contractual requirements including the following definition of "Disability":

"You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After 60 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often at it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim."

"**Material and substantial duties** means duties that :

- are normally required for the performance of you regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that that requirement if you are working or have the capacity to work 40 hours per week."

EXHIBIT
B

"**Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."

In addition, the following benefit limitation applies:

"Disabilities due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms have a limited pay period during your lifetime.

Disabilities which, as determined by Prudential, are due in whole or part to mental illness also have a limited pay period during your lifetime.

The limited pay period for self reported symptoms and mental illness combined is 24 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1. If you are confined to a hospital or institution at the end of the 24 month period, Prudential will continue to send you payments during your confinement.

   If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement period and for one additional recovery period up to 90 more days.

2. In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of stroke, trauma, viral infection, Alzheimer's disease or other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

Self-report symptoms means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy."

**Information about your initial claim**:

Our records reflect that you stopped working as a Receptionist due to Fibromyalgia, Sleep Apnea and Chronic Fatigue Syndrome. This was documented on the original Attending Physician's Statement completed by Dr. Fraioli on September 29, 2001.

**Information about your regular occupation:**

The Position Description provided by your Employer reflects that your job as a Receptionist is in the Secretarial Department. Your job duties include greeting and announcing incoming guests, answering switchboard for main incoming line, screening calls as needed for certain office staff, separating sales orders for Customer Service Department, performing data entry of strap and labor reports for Assembly Department, entering hours on R&D reports for Executive Vice-President and performing other duties at or above the same skill level at the discretion of the supervisor.

According to the Dictionary of Occupational Titles (DOT), your regular occupation as a Receptionist is as follows:

**237.367-038 Receptionist**
**O*NET SOC Code:** 43-4171.00 Receptionists and Information Clerks

Answer inquiries and obtain information for general public, customers, visitors, and other interested parties. Provide information regarding activities conducted at establishment; location of departments, offices, and employees within organization.

1. Greets persons entering establishment, determines nature and purpose of visit, and directs visitor to specific destination, or answers questions and provides information.

2. Provides information to public concerning available land leases, land classification, or mineral resources.

3. Registers visitors of public facility, such as national park or military base, collects fees, explains regulations, and assigns sites.

4. Answers telephone to schedule future appointments, provide information, or forward call.

5. Provides information to public regarding tours, classes, workshops, and other programs.

6. Transmits information or documents to customer, using computer, mail, or facsimile.

7. Records, compiles, enters, and retrieves information, by hand or using computer.

8. Operates telephone switchboard to receive incoming calls.

9. Performs duties such as taking care of plants and straightening magazines to maintain lobby or reception area.

10. Monitors facility to ensure compliance with regulations.

11. Receives payment and records receipts for services.

12. Conducts tours or delivers talks describing features of public facility, such as historic site or national park.

13. Hears and resolves complaints from customers and public.

14. Files and maintains records.

15. Enrolls individuals to participate in programs, prepares lists, and notifies individuals of acceptance in programs, and arranges and schedules space and equipment for participants

16. Types memos, correspondence, travel vouchers, or other documents.

17. Calculates and quotes rates for tours, stocks, insurance policies, and other products and services.

18. Collects and distributes messages for employees of organization.

19. Analyzes data to determine answer to customer or public inquiry.

**PHYSICAL REQUIREMENTS**

**Strength:** Sedentary Work
Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

**Reaching:** Frequently
Extending hand(s) or arm(s) in any direction.

**Handling:** Frequently
Seizing, holding, grasping, turning, or otherwise working with hand or hands. Fingers are involved only to the extent that they are an extension of the hand, such as to turn a switch or shift automobile gears.

**Fingering:** Occasionally
Picking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling.

**Talking:** Frequently
Expressing or exchanging ideas by means of the spoken word to impart oral information to clients or to the public and to convey detailed spoken instructions to other workers accurately, loudly, or quickly.

**Hearing:** Frequently
Perceiving the nature of sounds by ear.

**Information about our claim decision(s):**

Your claim was initially approved as you underwent surgery for Sleep Apnea on December 4, 2001. Subsequently, you were diagnosed with Bilateral Carpal Tunnel Syndrome and your claim continued to be paid. During a telephone conversation with our office on September 3, 2002, you advised you were no longer treating for your hands, were not referred for any additional surgery or treatment. Additionally, you advised you sleep with braces. Upon contacting your employer for clarification on your job duties, we were advised you were not required to perform repetitive bilateral hand activities. Furthermore, an Independent File Review was performed by Dr. George Becker, Orthopedic Surgery Psychiatry, on March 4, 2003. Dr. Becker opined that although you have moderate Carpal Tunnel Syndrome, you do have the functional ability to perform your regular occupation as a receptionist which is sedentary in nature. As the medical documentation no longer supported the inability to perform the material and substantial duties of your regular occupation, your claim was terminated.

You appealed this decision and, as a measure of financial assistance, we continued benefits pending the results of an Independent Medical Examination (IME).

As the IME documented that you suffered from a pain syndrome, your claim was approved solely on the diagnosis of Fibromyalgia. Please refer to our decision letter, dated April 15, 2003.

Medical documentation in file reveals you were last evaluated by Dr. Toder, Rheumatologist, on June 19, 2002. Dr. Toder documents he concurs with the diagnosis of fibromyalgia.

On November 7, 2003, you were treated by Dr. Rafal, Fibromyalgia Specialist. On physical examination, you had trigger point tenderness in the upper region, cervical region, lumbar region and both hips. Your gait was normal and Dr. Rafal documented that your upper body range of motion and cervical range of motion were within functional limits. At this visit, you reported intermittent Carpal Tunnel Syndrome symptoms and Dr. Rafal referred you to undergo an EMG/nerve conduction study to better assess your diagnosis of Carpal Tunnel Syndrome.

Medical evidence in file documents you have trigger point tenderness. Your upper body and cervical range of motions are within functional limits and there is no documentation of any changes made in your medications.

We understand that Dr. Rafal has referred you to undergo an EMG/nerve conduction study, however, there is no medical evidence in file to support that the Carpel Tunnel Syndrome condition would prevent you from performing the material and substantial duties of your regular occupation as a receptionist. Should you wish to submit the results of the EMG/nerve conduction study, we would be more than happy to review them. In addition, as your claim was payable for Fibromyalgia, your claim is subject to the Self Reported Symptoms limitation and we are no longer able to pay benefits beyond November 18, 2003. Therefore, your claim has been terminated effective November 19, 2003.

You have a right to appeal our decision. If you elect to do so, the appeal must be made in writing by you or your authorized representative. The appeal may identify the issues and provide other comments or additional evidence you wish considered, as well as any pertinent documents you may wish to examine. The written appeal should be submitted to:

Appeals Review Unit
The Prudential Insurance Company Of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19101

If you have any questions, please contact me at (800) 842-1718, extension 5789.

Sincerely,

*Denise Moppert*

Denise Moppert
Disability Consultant