UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORRAINE FEMINO | : | |
| | : | |
| v. | : | C.A. No. 06-143ML |
| | : | |
| NFA CORPORATION | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Before the Court are Defendant NFA Corporation's ("Defendant" or "NFA") Motion for Summary Judgment (Document No. 23) and Plaintiff Lorraine Femino's ("Plaintiff") Motion for Summary Judgment. (Document No. 51). These Motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and LR Cv 72. A hearing was held on May 11, 2007, and the Court has reviewed the Memoranda submitted by the parties and considered relevant legal research. For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment (Document No. 23) be GRANTED and Plaintiff's Motion for Summary Judgment (Document No. 51) be DENIED.

**Background**

On March 28, 2006, Plaintiff filed a Complaint for Injunctive and Declaratory Relief. (Document No. 1). Plaintiff's Complaint alleges that Defendant violated Title I of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq. Defendant is the Plan Sponsor and the Plan Administrator of the "NFA Corporation Employee Long Term Disability Coverage for all Employees" plan (the "Plan"). See Defendant's Statement of Undisputed Material Facts ("Facts")

¶ 1. Plaintiff enrolled in the Plan when she began her employment with NFA in 1995. Id. ¶ 2. In 1999, the Plan was amended, and the Prudential Insurance Company of America ("Prudential") became the insurer. Id. ¶ 3. The amendments to the Plan included a twenty-four month benefit period for disabilities based on self-reported symptoms. Id. ¶ 4. Plaintiff stopped working in 2001 due to fibromyalgia. Id. ¶ 5. Plaintiff's claim for benefits was approved after an administrative appeal, and she began to receive payments under the Plan. Id. ¶ 6. Plaintiff stopped receiving benefits in 2003, based on the "self-reported symptoms" limitation to the Plan, which limits recovery to twenty-four months for illnesses based on self-reported symptoms. Id. ¶ 7.

In this lawsuit, Plaintiff alleges that the Plan violates ERISA because there is no named fiduciary, Document No. 1, p. 14 at VI, ¶ 1, because she was denied access to Plan documents, Id. VI, ¶ 3, and because fiduciary duties were violated. Id. VI, ¶ 4. Additionally, she sets forth two ADA claims – first, she alleges that the Plan violates the ADA because it uses a prequalification test to disqualify certain medical evidence, id. p. 15, VI, ¶ 5; and second, she claims the Plan violates the ADA because it contains a twenty-four month limitation for benefits based on self-reported symptoms. Id. VI, ¶ 6.

Defendant moves for summary judgment on all of Plaintiff's claims, arguing that the ERISA claims are barred by the doctrine of res judicata and that the ADA claims fail on the merits. Plaintiff moves for summary judgment on all of her claims alleging she has proven her entitlement to recovery as a matter of law.

**Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great

Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Discussion**

**A. ERISA Claims**

Plaintiff argues that the Plan violates ERISA because there is no named fiduciary, because she was denied access to Plan documents, and because fiduciary duties were violated. Document No. 1, p. 14 at VI, ¶¶ 1, 3, 4. Defendant urges the Court to find that the ERISA claims are barred by the doctrine of res judicata because Plaintiff could have raised them in a previous action which has been finally decided.

This is the second of three lawsuits filed in this Court by Plaintiff against NFA.[1] In each of the three lawsuits, she has raised ERISA claims related to the termination of her benefits. The first case, Femino v. NFA Corp. d/b/a Hope Global, et. al., No. 05-19ML ("Femino I") raised three primary claims: (1) failure to disclose material modifications to the Plan in violation of 29 U.S.C. § 1022 and 29 C.F.R. § 2520.104a-7; (2) breach of fiduciary duty in violation of 29 U.S.C. §§ 1102 and 1104; and (3) breach of disclosure obligations. Facts, ¶ 9. Plaintiff sought civil penalties under 29 U.S.C. § 1132(c)(1)(B). Id. On July 17, 2006, Defendant's Motion for Summary Judgment in Femino I was granted on all counts, and, on September 5, 2006, the District Court entered final

[1] Plaintiff also brought suit against Prudential in state court in 2004 challenging the termination of her long-term disability ("LTD") benefits. That suit was removed to this Court in July 2004 due to the presence of ERISA jurisdiction and dismissed by stipulation shortly thereafter.

judgment in favor of Defendants and against Plaintiff. Plaintiff did not appeal the adverse judgment in that case.

In addition to Femino I and this case, Plaintiff filed a third case, Femino v. NFA Corp., C.A. No. 06-513ML ("Femino III"), which also contains an ERISA claim. Specifically, in that action, Plaintiff requests that the Court "[o]rder such appropriate equitable and remedial relief to ensure that Plaintiff receives accurate and comprehensive information on Plan policies that may exist in Plan documents apart from the document referenced herein as 'Exhibit H'..." See Femino III, Document No. 1 at p. 11. Defendant has also moved for summary judgment in that case, arguing that res judicata barred the ERISA claims. Defendant's Motion for Summary Judgment in Femino III was referred to me, and I am recommending that the District Court grant that Motion and find that res judicata bars the claims. For the reasons that follow, I recommend that the District Court find that the ERISA claims asserted in this case are also barred by the doctrine of res judicata based on the Court's final ruling in Femino I.

The Supreme Court noted that, "[u]nder the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that *were* raised or *could have been* raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). (emphasis added). "The doctrine of res judicata promotes the goals of fairness and efficiency by preventing vexatious or repetitive litigation." Caballero-Rivera v. Chase Manhattan Bank, N.A., 276 F.3d 85, 86 (1st Cir. 2002). Moreover, the doctrine "prevents plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit." Apparel Art Int'l, Inc. v. Amertex Enters., Ltd., 48 F.3d 576, 583 (1st Cir. 1995); AVX Corp. v. Cabot Corp., 424 F.3d 28, 31 (1st Cir. 2005) ("[t]he

implicit rationale is that, for the sake of efficiency, all such claims should be brought together, if this is possible. In short, the res judicata doctrine functions not only in its traditional role of preventing repeat claims, but has become a compulsory joinder requirement for closely related claims.")

To determine if Plaintiff's claims are barred by res judicata, the Court considers three factors: (1) whether a final judgment was entered on the merits in a previous suit; (2) whether there is sufficient identity between the causes of action asserted in the earlier and later suits; and (3) whether there is sufficient identity between the parties in the two suits. Apparel Art, 48 F.3d at 583. In this case, the Court need not devote significant attention to the first and third factors. As noted, the District Court entered final judgment against Plaintiff in Femino I, a case which involved the same parties present in this action.

The key question in this case is whether the claims presented in the two actions are sufficiently identical. The First Circuit Court of Appeals has adopted the analysis set forth in the Restatement (Second) of Judgments for defining a cause of action. See id. The First Circuit has noted that, "[i]n most situations involving federal claims, it is now enough to trigger claim preclusion that the plaintiff's second claim grows out of the same transaction or set of related transactions as the previously decided claim." AVX Corp., 424 F.3d at 31.

The claims in Femino I and this action grow out of the same transaction. A comparison of the Complaints in the two actions demonstrates the common underlying factual basis for the two actions. The "Statement of the Case" section of the two Complaints, for example, contains the same basic description of events and many identical paragraphs that were apparently copied and pasted into the new Complaint. Not only are the facts underlying the two Complaints clearly the same, but at her deposition, Plaintiff conceded that she could have raised these ERISA claims in her first

lawsuit, but stated, "I just blanked. I could have brought them against the first, but I chose to bring them up in the second one." Document No. 23, Ex. A at p. 12.

In addition to the similarity of the Complaints, and her admissions at the deposition, Plaintiff also conceded to the Court at the hearing that the ERISA allegations raised in this action are identical to those that she set forth in Femino III. As noted, the Court is recommending that the ERISA claims raised in Femino III be dismissed on the basis of res judicata. This issue does not present a close call. Instead, it is apparent that, after she received Judge Lisi's adverse decision in Femino I, Plaintiff simply attempted to restate and relitigate the same issues raised in that case which were finally decided in favor of Defendant. The Court has permitted Plaintiff to proceed with these cases and to demonstrate why they should not be barred by res judicata, but instead, she has repeatedly admitted that the claims are the same and that they could have been raised in her first case. Because there are no material facts in dispute and res judicata applies to these claims, I recommend that Defendant's Motion for Summary Judgment be GRANTED on Plaintiff's ERISA claims.

**B. ADA Claims**

Plaintiff alleges that the Plan violates the ADA for two reasons: (1) because of the Plan's pre-qualification test that disqualifies use of certain medical evidence; and (2) because of the twenty-four month limitation on benefits for self-reported symptoms. Defendant counters that the ADA claims fail on the merits because the safe-harbor provision of the ADA allows insurers to provide different benefits to individuals with different illnesses. After reviewing Plaintiff's claim and the relevant legal authority, the Court recommends that Defendant's Motion for Summary Judgment as to Plaintiff's ADA claims be granted, but for different reasons than those proposed by Defendant.

In order to bring a claim under the ADA, Plaintiff must first demonstrate that she is "a qualified individual with a disability" under 42 U.S.C. § 12112. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999). A recent opinion from District Judge Smith of this Court, Hatch v. Pitney Bowes, Inc., No. 05-155S, 2007 WL 1217714 (D.R.I. April 24, 2007), dictates that Plaintiff is not a qualified individual with a disability, and therefore she lacks standing to bring an ADA claim.

The ADA defines a "qualified individual" as one who "can perform the essential function of the employment position that [the] individual holds or desires." See 42 U.S.C. § 12111. In Hatch, the Court noted that the "the use of the present tense 'can perform' imparts an unequivocal requirement to the definition of 'qualified individual:' a person must be able to perform the essential functions of his job at the time the discrimination occurs in order to bring suit for discrimination under Title I." Hatch, 2007 WL 1217714 at *7. In Hatch, the Court held that the plaintiff was not a qualified individual under the ADA because he was determined to be totally disabled under his former employer's long-term disability plan. Because he could not perform the essential functions of his job, he was not entitled to bring a claim under the ADA. The Hatch court emphasized that litigants barred from bringing ADA claims because they do not meet the definition of a "qualified individual" are not left without recourse. The Court stated that the "resulting remedial gap is mitigated in part by ERISA's alternative statutory enforcement scheme which seeks to police just the kind of fringe benefit abuses alleged in this case." Id. at *10. The Court noted that "where a plan participant's benefits have been impermissibly altered or terminated, he may bring a claim under ERISA to recover the alleged erroneously-terminated benefits." Id.

In this case, Plaintiff is not a qualified individual under the ADA. In the Complaint, she alleges that she "remains disabled as defined within the meaning of the ADA having been

determined by the Social Security Administration to be suffering from a life-impacting and disabling medical impairment...." Document No. 1, p. 3 at III, ¶ 6. She also states, "I am disabled in accordance with 42 U.S.C. §12102(2) where...I am regarded by the Social Security Administration as being totally disabled...." Document No. 31 at p. 7. Plaintiff fails to meet the definition of a qualified individual because she has not demonstrated that she was able to perform the essential functions of her former job at the time that the discrimination took place. Further, there is no dispute that through her Complaint she is seeking to "recover all lost benefit payments not made from the time of benefit termination in November 2003...." Document No. 1 at p. 17, ¶ 8. As noted by Judge Smith in Hatch, the ADA is "well designed to help people get and keep jobs, not to help these no longer able to work get disability pay." Hatch, 2007 WL 1217714 at *7. Accordingly, Plaintiff's avenue of relief is through ERISA, not Title I of the ADA. For these reasons, I recommend that summary judgment enter against Plaintiff on her ADA claims.

Although the Court recommends that Defendant be granted summary judgment on the ADA claims because Plaintiff is not a qualified individual with a disability, the Court nevertheless considers the arguments Defendant advances in its Motion. As noted, Plaintiff's first ADA claim alleges that "reliable doctors [sic] medical evidence for certain disabilities was disqualified in advance of a disability review at a substantially higher rate than for other disabilities through the use of arbitrary self reported symptoms rules and policies contained in the plan thus violating 42 U.S.C. § 12112(a)." Document No. 1, p. 15 at VI, ¶ 5. Plaintiff also states that, "Prudential has stated that contract provisions of the plan allow Prudential to exclude medical evidence by plan participants doctors for certain disabilities from being included in any disability review." Id. V, p. 11.

Although not entirely clear, the Court surmises that Plaintiff's first claim is that the "pre-qualification" of medical evidence violates the ADA. Plaintiff does not point to any specific

provision in the Plan that contains the pre-qualification test upon which she bases this claim. Moreover, after reviewing the Plan in detail, there does not appear to be any provision which discusses a pre-qualification test. Id. p. 15, ¶ 1. The Court concludes, therefore, that rather than asserting a claim under the ADA that the Plan contains discriminatory terms, Plaintiff is displeased with the how her specific claim was handled. At the argument on the Motion, Plaintiff specifically discussed how her medical evidence of fibromyalgia was not considered by Prudential. Without any plan provision concerning the "pre-qualification" of medical evidence and in light of the numerous arguments Plaintiff advances that concern only how her specific claim was handled, the Court concludes that Plaintiff's first ADA claim fails as a matter of law, and the Court recommends that Defendant's Motion for Summary Judgment be GRANTED on this alternate ground.

Plaintiff's second claim under the ADA appears to generally challenge the twenty-four month limitation for illnesses based upon self-reported symptoms. Plaintiff states that the plan "den[ied] Plaintiff the enjoyment of disability benefits beyond 24 months by using arbitrary policies and standards to disqualify all of plaintiffs doctors medical evidence" from being reviewed in connection with her disability claim. The Plan contains a provision that "[d]isabilities due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms have a limited pay period during your lifetime....The limited pay period for self-reported symptoms...is 24 months during your lifetime." See C.A. No. 05-19ML, Document No. 88, Ex. 2, p. 18. The Plan states, "[s]elf-reported symptoms means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy." Id.

In support of its contention that the self-reported symptoms rule does not violate the ADA, Defendant relies on 42 U.S.C. §12201(c). That section states that the ADA does not prohibit or restrict:

> (1) an insurer...or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or
>
> (2) a person, or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or
>
> (3) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.

Defendant argues that this provision of the ADA expressly permits the type of benefits limitation at issue in this case. Defendant argues that the ADA "protects disabled individuals from discrimination in access to goods or services, but not in an insurance company's administration of risk." Document No. 23, p. 8. See also Kimber v. Thiokol Corp., 196 F.3d 1092, 1101-1102 (10th Cir. 1999) ("[s]o long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities.") Accord Rogers v. Dep't of Health, Envtl. Control, 174 F.3d 431 (4th Cir. 1999); Parker v. Metro. Life Ins. Co., 121 F.3d 1006 (6th Cir. 1997). The Court finds the reasoning of these Circuits to be persuasive and accordingly recommends that Defendant's Motion for Summary Judgment be granted on this alternate ground. Finally, because this Court recommends that Defendant's Motion for Summary Judgment be granted on all counts, I also

recommend that Plaintiff's Motion for Summary Judgment (Document No. 51) be DENIED.

**Conclusion**

For the reasons stated, I recommend that the District Court GRANT Defendant's Motion for Summary Judgment (Document No. 23) and DENY Plaintiff's Motion for Summary Judgement. (Document No. 51). I also recommend that the District Court enter Final Judgment in favor of Defendant and against Plaintiff on all claims in Plaintiff's Complaint.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72(d). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 6, 2007