**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LORRAINE FEMINO** | : | |
| | : | |
| | : | |
| **VS.** | : | |
| | : | **C.A. 06-143ML** |
| | : | |
| | : | |
| **NFA CORPORATION** | : | |

**PLAINTIFF LORRAINE FEMINO'S OBJECTION TO MAGISTRATE JUDGE LINCOLN D. ALMOND'S REPORT AND RECOMMENDATION**

**Lorraine Femino, Pro Se**
**4 Bayou Drive**
**Greenville, R.I. 02828**
**(401)-949-4933**

## I. Introduction

Plaintiff submits the following objections to Magistrate Lincoln D. Almond's June 6, 2007 Report and Recommendation ("Report"). The Report recommends that the Court grant Defendant NFA Corporation's ("defendant NFA") Motion to Dismiss with respect to all counts of Plaintiffs Complaint pursuant to 28 U.S.C. 636(b)(1)(B) and LR Cv 72 . Plaintiff respectfully objects to the Reports recommendation that plaintiffs Motion for Summary Judgment be Denied and defendants Motion for Summary Judgment be Granted for all counts under the Employment Retirement Income Security Act ("ERISA") and the Americans With Disabilities Act of 1990 ("ADA").

As a matter of law and rulings in the Supreme Court and in the First Circuit Plaintiff has the right to receive appropriate Plan information exclusively from the Plan administrator, defendant NFA, to uphold plaintiffs right to make informed decisions on the ADA claims.

In the matters of the ADA Complaint, recent rulings in the Supreme Court and in the First Circuit uphold as a matter of law the rights of former employees to bring discrimination suits against a former employer. The ADA, as it pertains to the term "qualified individual with a disability" must be ruled as ambiguous based on the Supreme Court and First Circuit decisions and decided on the merits of supporting case law.

## II. <u>The Magistrate incorrectly ruled that the doctrine of res judicata controls this ERISA matter.</u>

### 1. The final judgment in Femino I is based on extrinsic evidence provided by the Plan administrator and cannot change the expressed written terms of the Plan.

In Femino v. NFA Corporation d/b/a Hope Global, C.A. 05-019ML, ("Femino I"), the Court ruled that the document "Exhibit H" represented the Plan document based on affidavit submitted by defendant NFA. The plain language of the Plan defines the plan as being "a line of coverage under the "Group Contract" and Exhibit H is not defined as being the "entire Group Contract" See Document 11, CA 06-143ML, REPLY by Lorraine Femino, Attachments: # 1 Exhibit 1: Certificate of Coverage Glossary; page 30, # 2 Exhibit 2: Certificate of Coverage, page 4). In the absence of any written evidence in Exhibit H or otherwise that Exhibit H is the "entire Group Contract", Exhibit H violates 29 CFR 2520.104b-1 (b)(3) by not being expressly identified as being the "Group Contract" or the "Plan document". 29 CFR 2520.104b-1 (b)(3) states in pertinent part that;

> "For purposes of section 104(b)(2) of the Act, where certain documents are required to be made available for examination by participants and beneficiaries in the principal office of the plan administrator ...disclosure shall be made pursuant to the provisions of this paragraph. Such documents must be current, readily accessible, and clearly identified...".

The expressed written terms of the Plan state that the Group Contract is the defining Plan document and thus a ruling in Femino I based on extrinsic evidence

provided by the Plan administrator cannot change the expressed written terms of the Plan. See Gordon v. Barnes Pumps Inc., 999 F.2d, 133 at 137 (6th Cir. 1993) ("a basic principle of ERISA is that a plan may not be modified or superseded by oral statements or other extrinsic evidence"). Hozier v. Midwest Fasteners, 908 F.2d 1155 at 1163 (3d Cir. 1990) ("the unambiguous written provisions of a plan must control, and extrinsic evidence may not be introduced to vary the express terms of a plan").

The ruling in Femino I based on extrinsic evidence not written in any Plan documents cannot be considered a final ruling on the expressed written terms of the Plan.

### 2. The doctrine of res judicata cannot be used to cause a plan participant to forfeit statutory protections under ERISA

Plaintiff remains a plan participant of the Plan (Lorraine Femino v. NFA Corporation, CA-06-143ML, Statement of Undisputed Facts, Document 52, ("Facts"), at 3). Plaintiffs rights to protect possible Plan benefits are statutorily protected rights under ERISA. See Cooper vs. IBM Personal Pension Plan, 274 F.Supp.2d 1010, 1014 (S.D. Ill. 2003). ("The plain language of [ERISA § 502(a)(3)] confers statutory standing to plan participants,...who seek to protect their employee benefit rights").

"[A] fiduciary must disclose material facts of which plan participants are unaware but need to know in order to protect their interests in dealing with third parties" Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 12 (1st Cir. 1994) (citing Bixler v. Central Pa. Teamsters Health & Wel. Fund, 12 F.3d 1292 at 1300 (3d Cir.1993). In Bixler, the Court recognized that "[t]he fiduciaries obligations will not be excused merely because [participant] failed to comprehend or ask about a technical aspect of the plan." See Id at 1300. "Allowing an injured beneficiary recourse through the courts is furthermore, essential to fulfilling the purpose of ERISA". See Id at 1299.

In the DC Circuit's opinion in Eddy v. Colonial Life Ins. Co., 919 F.2d 747, (DC Circuit 1990) the case involved an ERISA plan participant's right to receive accurate plan information once the participant made a single phone call to the plan fiduciary where the participant informed the fiduciary of the predicament on the call. See Id at 751. The Court affirmed a right of an ERISA plan participant that "[r]egardless of the precision of his question, once a beneficiary makes known his predicament, the fiduciary is under a duty to communicate …all material facts in connection with the transaction he knows or should know". See Id at 751. A fiduciary's duty…is not discharged simply by the issuance and dissemination of …documents and notices. See Id at 750. The Third and DC Circuits fulfilled one of the basic mandates of statutory construction: that remedial statutes such as ERISA should be interpreted broadly, in favor of the party to be protected. See PBR, Inc. v. Sec'y of Labor, 643 F.2d 890, (1st Cir. 1981).

"The doctrine of res judicata promotes the goals of fairness and efficiency" Caballero-Rivera v. Chase Manhatten Bank, N.A., 276 F.3d 85, 86(1st Circuit 2002). In matters pertaining to Plan administration and requests for accurate Plan information, ERISA demands that a participant must look only to the named Plan Administrator. See Curtiss-Wright v. Schoonejongen, 514 U.S. 73, 79 (1995) (holding that the procedure for plan administration as defined under 29 U.S.C. § 1102(b)(2)) is in the naming of a plan administrator where a plan participant must look only to the named administrator for plan information "and not to any other person…, not to any union, not to any third-party trustee, and not to any of the other kinds of outside parties"). The Plan administrator has the duty to make plan information "understandable" for Plan participants. See e.g. Harte v. Bethlehem Steel, 214 F.3d 446 at 448 and 452-3 (3d Cir. 2000) (A Plan administrator

has a special duty to offer "complete and accurate" disclosures about provisions that are "confusing" or "likely to be misunderstood."). See also Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982) (the fiduciary standard is the "highest known to the law").

In this matter, the Report and Recommendation cites no case law involving the legal obligations between a fiduciary and a beneficiary and such obligations cannot be excused under the doctrine of res judicata.

**3. A fiduciary's failure to provide requested Plan information is caused by Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud and an extraordinary circumstance not to be excused under the doctrine of res judicata**

Plaintiff has properly identified defendant NFA as being the Plan Administrator and Plan fiduciary (Facts 4). See also Pegram v. Herdrich, 530 U.S., 211, 212 (2000) (Holding a fiduciary is "someone acting in the capacity of a manager, administrator, or financial advisor to a plan"). See also ERISA Sec. 3(21); 29 U.S.C. 1003(21). Plaintiff has properly identified an issue relevant to the instant case pertaining to the identity of all Plan documents. The plain language of the Plan defines the plan as being "a line of coverage under the "Group Contract". Exhibit H is not defined as being the "entire Group Contract" See Document 11, CA-06-143ML, REPLY by Lorraine Femino, Attachments: # 1 Exhibit 1: Certificate of Coverage Glossary; page 30, # 2 Exhibit 2: Certificate of Coverage, page 4). In the absence of any written evidence in Exhibit H that Exhibit H is the "entire Group Contract", Exhibit H violates 29 CFR 2520.104b-1 (b)(3) by not being expressly identified as being the "Group Contract" or the "Plan document". 29 CFR 2520.104b-1 (b)(3) states in pertinent part that;

> "For purposes of section 104(b)(2) of the Act, where certain documents are required to be made available for examination by participants and beneficiaries in the principal office of the plan administrator ...disclosure shall be made pursuant to the provisions of this paragraph. Such documents must be current, readily accessible, and clearly identified..." .

The Courts have widely held that the fiduciary standard is the "highest known to the law" See e.g. Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982); Beddall v. State Street Bank and Trust Company, 137 F. 3d 12, 18 (First Circuit 1998) ("An ERISA fiduciary, properly identified, must employ within the defined domain "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."); Harte v. Bethlehem Steel, 214 F.3d 446 at 448 and 452-3 (3d Cir. 2000) (A Plan administrator has a special duty to offer "complete and accurate" disclosures about provisions that are "confusing" or "likely to be misunderstood."). 29 U.S.C. 1104(a)(1)(B)). Under Fed. Rules of Civ Proc. 60(b) relief is "extraordinary relief" reserved for "exceptional circumstances," given the countervailing interest in the finality of such orders. See United States v. One Urban Lot, 882 F.2d 582, 585 (1st Cir. 1989). Fed. Rules of Civ Proc. 60(b) states in pertinent part;

> "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been

> discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

"[A] fiduciary must disclose material facts of which plan participants are unaware but need to know in order to protect their interests in dealing with third parties" Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 12 (1st Cir. 1994) (citing Bixler v. Central Pa. Teamsters Health & Wel. Fund, 12 F.3d 1292 at 1300 (3d Cir.1993). In Bixler, the Court recognized that "[t]he fiduciaries obligations will not be excused merely because [participant] failed to comprehend or ask about a technical aspect of the plan." See Id at 1300. "Allowing an injured beneficiary recourse through the courts is furthermore, essential to fulfilling the purpose of ERISA". See Id at 1299.

The Court should rule that where a fiduciary did not provide accurate information, the omission can only be ruled a "mistake; inadvertence; excusable neglect; newly discovered evidence; fraud, etc" by the fiduciary. See Fed. Rules of Civ. Proc. 60(b). As the Bixler Court held "the [fiduciary] duty recognizes the disparity of training and knowledge that potentially exists between a lay beneficiary and a trained fiduciary". See Bixler, supra 12 F.3d 1292 at 1300.

Defendant NFA being the Plan fiduciary has a special duty to provide information to plaintiff clarifying this matter allowing plaintiff to determine if the ADA claims should be withdrawn. Under current ERISA statutes and rulings by the Supreme Court, plaintiff has but one place to obtain accurate Plan information being the Plan administrator . See Curtiss-Wright v. Schoonejongen, 514 U.S. 73, 79 (1995) (holding that the "procedure" for plan administration as defined under 29 U.S.C. § 1102(b)(2)) is in the naming of a plan administrator where a plan participant must look only to the named administrator for plan information "and not to any other person…, not to any union, not to any third-party trustee, and not to any of the other kinds of outside parties")

Where a fiduciary provides erroneous plan information to a lay beneficiary, such action should be considered an "extraordinary circumstance" where relief under the doctrine of res judicata cannot be deemed as promoting the goals of "fairness and efficiency" as prescribed under the doctrine of res judicata. See Caballero-Rivera v. Chase Manhatten Bank, N.A., 276 F.3d 85, 86(1st Circuit 2002). ("The doctrine of res judicata promotes the goals of fairness and efficiency")

### 3. There is not sufficient identicality between NFA as plaintiffs employer and NFA in their role as the Plan administrator and Plan Fiduciary to warrant that the doctrine of res judicata applies.

In Lorraine Femino v. NFA Corporation, d/b/a Hope Global et.al., CA 05-019, defendant NFA was the named defendant in their capacity as plaintiffs employer. In the instant case, plaintiff has properly identified defendant NFA as the Plan administrator and Plan fiduciary (Facts 4). See also Pegram v. Herdrich, 530 U.S., 211, 212 (2000) (Holding a fiduciary is "someone acting in the capacity of a manager, administrator, or

financial advisor to a plan"). See also ERISA Sec. 3(21); 29 U.S.C. 1003(21). An employer is under no statutory obligation to employ "care, skill, prudence, and diligence" where a Plan administrator is under such statutory duty. See Beddall v. State Street Bank and Trust Company, 137 F. 3d 12, 18 (First Circuit 1998) ("An ERISA fiduciary, properly identified, must employ within the defined domain "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. 1104(a)(1)(B)). See also Eddy v. Colonial Life Ins. Co., 919 F.2d 747, 750 (D.C. Cir. 1990). (Holding that the common law of trusts generally treats the communication of material facts to the beneficiary as "the core of a fiduciary's responsibility."). The distinction between plaintiffs employer and defendant NFA's duties as the named Plan Administrator and Plan fiduciary should be upheld as a sufficient distinction on the parties in this matter.

## IV. Title I of the ADA prohibits discrimination by employers regarding the "terms, conditions, and privileges" of employment including "fringe benefits" such as disability benefits.

Title I of the ADA prohibits discrimination by employers regarding the "terms, conditions, and privileges" of employment, 42 U.S.C. 12112(a), including "fringe benefits" such as disability benefits. 42 U.S.C. 12112(b)(2) where discrimination is defined as including "utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability" 42 U.S.C. 12112(b)(3)(A). See also Quinones v. City of Evanston, 58 F.3d 275, 278 (7th Cir. 1995). (Federal discrimination law forbids providing benefits of employment where discrimination would be "equivalent to a lower salary for the same work.").

The same protection's afforded to current employees under the ADA and Title VII of the Civil Rights Act of 1964 should be afforded to former employees. See EEOC v. Waffle House, Inc., 534 U.S. 279 (2002) ("The ADA directs…the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when enforcing the ADA's prohibitions against employment discrimination on the basis of disability".)

Under Federal law, Congress' use of the term "employee" as held in Robinson v. Shell Oil Co., 519 U.S. 337 (1997) has been affirmed in the First Circuit in Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1 (1st Cir. 1998) ("Congress' use of the word 'employees' does not inherently exclude former and prospective employees"). The Duckworth decision reached in 1998 reached a similar conclusion on Congress' use of the term "employee" as the Third Circuits opinion in Ford v Schering-Plough Corp., 145 F.3d 601, 606 (3d Cir. 1998) ("We resolve this ambiguity by interpreting Title I of the ADA to allow disabled former employees to sue their former employers regarding their disability benefits so as to effectuate the full panoply of rights guaranteed by the ADA.")

Defining Congress' definition of an employee, the First Circuit and Supreme Court have relied upon other federal anti-discrimination statutes that contain similar definitions of "employee," such as the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1994), the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (1994), the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (1994); and Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-54. See Serapion v. Martinez, 119 F.3d 982, 985 (1st Cir. 1997) ("We regard Title VII, ADEA, ERISA, and FLSA as standing in pari passu and endorse the practice of

treating judicial precedents interpreting one such statute as instructive in decisions involving another."). See also EEOC v. Waffle House, Inc., 534 U.S. 279 (2002). ("The ADA directs…the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when enforcing the ADA's prohibitions against employment discrimination on the basis of disability"); Raymond B. Yates, M.D., P.C. Profit Sharing Plan et. Al. v. Hendon, Trustee, 541 U.S. 1 (2004) (The term "any employee" as being synonymous with the terms "employee" and "former employee" in 29 U.S.C. § 1002 (7)); Duckworth v. Pratt & Whitney, Inc., supra, 152 F.3d 1, ("[t]he FSLA provides that the definition of "employee" … is also applicable to the FMLA")

The Supreme Court's recent decision in Smith v. City of Jackson, 544 U.S. 228 (2005) (holding a claimants rights to "recovery in "disparate-impact" cases "comparable" to Griggs v. Duke Power Co., 401 U.S. 424 (1971)) concerned the scope of Title VII to include cases "comparable" to Griggs under the ADEA. Give the Supreme Courts decision in EEOC v. Waffle House, Inc., supra, 534 U.S. 279 the decision in Smith v. City of Jackson, supra, 544 U.S. 228, supports that the comparability standard must apply to both the ADEA and the ADA. If the term "any employee" and "former employee" are to be considered equal under Title VII of the Civil Rights Act of 1964 and the ADA, then plaintiffs complaint can be shown to be "comparable" to Griggs v. Duke Power, supra, 401 U.S. 424. This lends support for interpreting Title I of the ADA to permit suits by disabled individuals against their former employers concerning their disability benefits when the case is "comparable" to Griggs

Plaintiffs case in comparable to Griggs where the arbitrary exclusion of all medical evidence pertaining to a specific disability of fibromyalgia in advance of a disability review is comparable to Griggs facing the headwind of being denied the ability to take a promotion test because of not having a high school education See Id. No evidence was submitted by defendants showing specific any actuarial studies or contractual clauses in the Plan specific to the disability of Fibromyalgia supporting the exclusion of all Fibromyalgia evidence in a disability review.

The Second and Third circuits have ruled that former employees are protected under Title I of the ADA applying similar rationale as is presented in plaintiffs case. See Ford v. Schering Plough Corp., 145 F.(3d Cir. 1998) and Castellano v. City of New York, 142 F.3d 58 (2nd Cir. 1998).

In the case of Ford, the individual involved was a former employee who had become disabled due to a mental condition. The long term disability policy offered by her employer limited benefits primarily due to specific language in the plan for mental conditions. Id at 603. The Third Circuit denied the former employer motion to dismiss, noting that the term "qualified individual with a disability" did not specify any temporal qualifier, and therefore could be interpreted so as to permit former employees to sue their former employers regarding their disability benefits. Id at 606-07.

In Castellano v. City of New York, supra, 142 F.3d 58, the Castellano Court followed a similar line of reasoning. At issue in Castellano was the provision of supplemental funds that could be given to a retired police or firefighter in addition to their regular pensions. Individuals who had retired on disability pensions could not obtain these benefits regardless of their length of service. See Id at 63-64. Various police

and firefighters complained that this pension scheme discriminated against them on the basis of disability. The employers argued that the individuals who had retired on disability pensions were not "qualified individuals with a disability" pursuant to the ADA. The second Circuit rejected this argument. In common with the Ford Court, the Second Circuit also found that the term "qualified individual with a disability" was temporally ambiguous. See Id at 67. The second Circuit also pointed out that the ADA prohibited discrimination in the provision of fringe benefits. See Id at 68. The Second Circuit suggested that in fact Congress never intended that individuals must establish that they were "qualified individuals with disabilities" before they could obtain protection from discrimination in the provision of post employment benefits. In decisions regarding hiring or retention, qualifications were certainly an issue. Therefore, it is entirely appropriate to limit actions only in those instances to those individuals who are qualified See Id. However in cases involving post employment fringe benefits are radically different See Id at 68. To deny individuals the right to sue for discriminatory treatment in the provision of benefits, the Court concluded, would frustrate the Act's stated intention in the provision of benefits: "…it is inconceivable to us that Congress would in the same breath expressly prohibit discrimination in fringe benefits, yet allow employers to discriminatorily deny or limit post employment benefits to former employees who had ceased to be 'qualified' at or after their retirement, although they had earned those fringe benefits through the years of service in which they performed the essential functions of employment" See Id at 69.

Although the First Circuit has not yet ruled on this issue, it is of some significance that the holdings of Castellano and Ford have gained acceptance in this Circuit's District

Courts and have permitted former employees to proceed with actions for discrimination in the provision of fringe benefits pursuant to the ADA despite the fact that they were no longer "qualified individuals with a disability". See Fletcher v. Tufts Univ., 367 F.Supp.2d 99, 106 (D.Mass. 2005); Iwata v. Intel Corporation, 349 F.Supp.2d 135, 147 (D.Mass. 2004); Conners v. Maine Medical Center, 42 F.Supp.2d 34, 45 (D. Me. 1999).

**1. The term "qualified individual with a disability" is not restricted only to current employees with a disability who are on the job and ready to do work and is therefore is an ambiguous term.**

The Rehabilitation Act, Section 504, 29 U.S.C. § 794 provides that in employment discrimination cases alleging violations of the Rehabilitation Act, "[t]he standards used to determine whether this section [of the Rehabilitation Act] has been violated . . . shall be the standards applied under title I of the Americans with Disabilities Act." Whether a suit is filed under the Rehabilitation Act or under the ADA, the substantive standards for determining liability are the same. See Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995). The First Circuit has held that extended leaves of absence can be a reasonable accommodation for disabled persons. See Garcia-Ayala v. Lederle Partenterals, Inc., 212 F.3d 638, 648 (1st Cir. 2000), which explained that;

> [s]ome employees, by the nature of their disability, are unable to provide an absolutely assured time for their return to employment, but that does not necessarily make a request for leave to a particular date indefinite. Each case must be scrutinized on its own facts. An unvarying requirement for definiteness again departs from the need for individual factual evaluation.

See also Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 878 (9th Cir. 1989) (holding that leaves of absence for cluster headaches were a reasonable accommodation

where no evidence existed as to how the leave of absence would impose an undue hardship on the employer).

Congress made clear its intention that identical standards were to be applied to both Acts. 42 U.S.C. § 12117(b) provided that enforcement agencies were to develop procedures to ensure that complaints are resolved in the same manner so as to avoid duplication of effort and imposition of inconsistent or conflicting standards under the ADA and Rehabilitation Acts. Whether suit is filed under the Rehabilitation Act or under the ADA, the substantive standards for determining liability are the same. See Myers v. Hose, supra, 50 F.3d 278, 281; See also 42 U.S.C. § 12117(b) . It should not be held that the term "qualified individual with a disability" in the ADA has no other meaning than current employees ready to do the job and is thus an ambiguous term.

**2. In a complaint of discrimination in a fringe benefit the ADA provides greater protections than ERISA against disability discrimination.**

ERISA statutorily proscribes discrimination under ERISA Section 510, 29 U.S.C. § 1140 (holding in pertinent part "It shall be unlawful for any person to … discriminate against a participant or beneficiary …for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan…"). While ERISA does proscribe discrimination, the ADA provides specific defined protections for disabled persons and thus the ADA provides greater protections than ERISA against disability discrimination in a fringe benefit. See e.g. 42 U. S. C. § 12101, et. seq

## Conclusion

As a matter of law, the Court should DENY the conclusions in the Report that the doctrine of res judicata is enforceable in matters of ERISA fiduciary duties and uphold that plaintiffs claims for plan information exclusively from defendant NFA be Granted to uphold plaintiffs ability to decide if the ADA claims should continue or be withdrawn.

Pertaining to the ADA matters, the better reading of the ADA – as adopted by recent decisions in the Supreme Court and First Circuit, along with decisions adopted in the sister courts in our own Circuits- should allow plaintiff to invoke ADA protections against discrimination in the provision of post employment benefits. Therefore the Report should not be allowed to stand as it relates to the ADA matters.

Respectfully submitted

Lorraine Femino

Lorraine Femino, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401)-949-4933

June 20, 2007

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was served by United States Postal Mail, postage prepaid on this 20th day of June, 2007 to:

William E. O'Gara, Counsel for Defendants
One Financial Plaza, Suite 1800
Providence, RI 02903

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401) 949-4933